UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TEKSYSTEMS, INC., ) | |
| ) | |
| **Plaintiff,** ) | No. 08 cv 5476 |
| ) | |
| v. ) | **Judge Suzanne B. Conlon** |
| ) | |
| MODIS, INC., BRIAN PELLIGRINI, ) | **Magistrate Judge Denlow** |
| JASON LUKAS, and ROBERT J. RUF, ) | |
| ) | |
| **Defendants.** ) | |

## TEKSYSTEMS' RESPONSE IN OPPOSITION TO DEFENDANT BRIAN PELLIGRINI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This Court should deny Defendant Brian Pelligrini's attempt to evade responsibility for his role in the misappropriation of trade secrets and other confidential information from the Downers Grove, Illinois office of Plaintiff TEKsystems, Inc. ("TEKsystems"), and for breaching his employment agreement and improperly soliciting and inducing another Illinois TEKsystems' employee to do the same. Pelligrini's motion rests on twin faulty premises: (1) that his limited physical presence in Illinois and "alleged telephone calls to Illinois are wholly insufficient to satisfy due process" in the personal jurisdiction analysis; and (2) that the discretionary and equitable fiduciary shield doctrine precludes the exercise of jurisdiction because Pelligrini was acting on Modis' behalf. (Pelligrini Mem. at 7, 8.)

Pelligrini is wrong, and this Court should waste no time in dispatching his motion. As the Seventh Circuit and scores of other Illinois courts have recognized: "'the state in which the victim of a tort suffers the injury may entertain a suit against the accused tort feasor' even if all other relevant conduct took place outside Illinois." *Riddell, Inc. v. Monica*, No. 03 C 3309, 2003 WL 21799935, at *3 (N.D. Ill. July 25, 2003) (quoting *Janmark v. Reidy*, 132 F.3d 1200, 1202-03 (7th Cir. 1997)). The allegations of the Complaint, together with the attached affidavit of Shane Overly, establish a *prima facie* case of personal jurisdiction: (1) Pelligrini knowingly orchestrated the misappropriation and delivery of trade secrets and other confidential information from TEKsystems' Downers Grove, Illinois office to Defendant Modis' Chicago office; (2) Pelligrini improperly induced and solicited Defendant Jason Lukas to breach TEKsystems'

employment agreement and policies in Illinois; and (3) Pelligrini violated his own employment agreement with TEKsystems. The fiduciary shield doctrine does not apply because Pelligrini appears to have acted at least in part based on his personal friendship with Lukas, and because he voluntarily acted within his discretion as a Modis Managing Director, instead of at Modis' express direction. *Clark Products, Inc. v. Rymal*, No. 02 C 6893, 2002 WL 31572659, at *3 (N.D. Ill. Nov. 19, 2002).

### STATEMENT OF FACTS

1.      TEKsystems is a Maryland corporation with offices throughout the United States. (Compl. ¶ 2; Pelligrini Mem. at 2.) TEKsystems has offices in Chicago and Downers Grove, Illinois. (*Id.*) TEKsystems provides information technology and communications consulting services and staffing to its clients, focusing primarily on the temporary and permanent staffing needs of the communications, financial services, business services, government, manufacturing, and information technology industries. (*Id.*) TEKsystems' Account Managers manage, build, nurture, and maintain its client relationships and determine the clients' staffing needs, which are then filled by TEKsystems' Technical Recruiters. (*Id.*)

2.      Competition in the professional staffing industry in general is fierce and highly dependent on the staffing company's development, maintenance and use of nonpublic information relating to clients, prospective clients, and candidates, as well as professional contacts and relationships, reputation, and trust. (Compl. ¶ 11.)

3.      Pelligrini was employed as an Account Manager in TEKsystems' Southfield, Michigan office (outside Detroit) until March 6, 2006, when he resigned and went to work as the Managing Director of Modis' Detroit office. (Compl. ¶¶ 4, 24; Pelligrini Mem. at 2.) Pelligrini recently moved to Minnesota to become the Managing Director of Modis' Minneapolis office. (*Id.*) Pelligrini maintains that he is not an officer or majority shareholder of Modis, but does not identify whether he owns shares in Modis. (*See* Pelligrini Mem. at 2 & Ex. 1, ¶ 2.)

4.      Pelligrini signed an employment agreement with TEKsystems in which he agreed to become personally acquainted with the business connections, customers, clients and trade of TEKsystems. (Compl. ¶ 26; *see* Pelligrini Mem. at 3.) Pelligrini recognized in signing the agreement that the disclosure or appropriation of TEKsystems' confidential information, whether directly or indirectly, will irreparably and substantially cause considerable financial and other loss, detriment and damage to TEKsystems. (Compl. ¶ 26 & Ex. A.) As an Account Manager

and employee at TEKsystems for six years, Pelligrini knew of TEKsystems' strict policy requiring all of its Account Managers, including Defendant Lukas, to sign employment agreements with such terms. (Compl. ¶ 140; Ex. 1, Overly Aff. ¶ 10-11; *but see* Pelligrini Mem. at 4 & Ex. 1, ¶ 8 (denying knowledge of Lukas' employment agreement, but failing to address knowledge of TEKsystems' strict policy that all Account Managers sign employment agreements).)

5. In his employment agreement, Pelligrini promised for eighteen months after his separation from TEKsystems not to compete with TEKsystems within a 50-mile radius of any office at which he worked during the preceding two years. (Compl. ¶ 27 & Ex. A ¶ 3; Pelligrini Mem. at 3.) He also agreed not to solicit TEKsystems' clients, customers, employees, or contractors for eighteen months after his separation from TEKsystems. (Compl. ¶ 28 & Ex. A ¶ 4; Pelligrini Mem. at 3.)

6. Pelligrini and Lukas were personal friends; when Pelligrini left TEKsystems, TEKsystems Regional Vice President Shane Overly explained to Lukas that he should not allow his friendship with Pelligrini to affect his judgment, and reminded him that TEKsystems' confidential and trade secret information could not be shared or discussed with Pelligrini. (Ex. 1, Overly Aff. ¶ 6.) Pelligrini does not dispute that he solicited Lukas to leave TEKsystems' Downers Grove, Illinois office, and that he also lobbied Modis management to find a place for Lukas at Modis. (Compl. ¶¶ 59-63.) Pelligrini also does not dispute that he engaged in these solicitations prior to the September 2007 expiration of the non-solicitation provision of his TEKsystems' employment agreement. (*Id.*; *see also* Pelligrini Mem. at 3.)

7. Pelligrini encouraged Lukas to bring trade secrets from TEKsystems' Chicago and Downers Grove offices for disclosure to, and use by, Modis' Chicago office. (Compl. ¶¶ 67, 88.) Pelligrini baldly denies this allegation, suggesting as a reason that he "would receive no personal benefit from doing so either since [he] did not work in the Chicago office and TEKsystems' information regarding the Chicago market would not assist [him] in . . . Minneapolis, Minnesota." (Pelligrini Mem. Ex. 1, ¶ 7.) Pellgrini does not, however, discount the intangible benefit derived from the fact that finding a new manager for Modis' Detroit office would place him in a favorable light with his employer while also helping his personal friend.

8. Pelligrini purportedly received no monetary benefit or other remuneration from Modis as a result of his successful efforts to solicit Lukas to leave TEKsystems to work for

Modis after pilfering TEKsystems' trade secret and other confidential information. (Pelligrini Mem. at 5 & Ex. 1 ¶¶ 7, 9.) Pelligrini, however, does <u>not</u> aver that he was directed by Modis to breach his employment agreement with TEKsystems by soliciting Lukas for employment, or that he was directed by Modis to encourage Lukas to bring TEKsystems' confidential information with him. For its part, Modis denies that its management was involved in the solicitation of Lukas or in encouraging him to misappropriate TEKsystems' trade secret and confidential information. (Modis Answer, ¶¶ 87-88 (Docket # 51).)

<u>ARGUMENT</u>

Although Pelligrini is the moving party, TEKsystems with this Response bears the burden to show a *prima facie* case for personal jurisdiction over Pelligrini. *See FAIP North Am., Inc. v. Sistema s.r.l.*, No. 05 C 4002, 2005 WL 3436398, at *2 (N.D. Ill. Dec. 14, 2005) (On rule 12(b)(2) motion, "the burden of proof rests upon the party asserting jurisdiction; however, this party is only required to make a *prima facie* showing that jurisdiction exists." (citation omitted)). In evaluating whether the TEKsystems has made the requisite showing, "the court must accept all well-pleaded facts within the complaint as true, resolve all factual disputes in favor of [TEKsystems], and draw any reasonable inferences from those facts in [TEKsystems'] favor." *Sistema*, 2005 WL 3436398, at *2.

In determining whether personal jurisdiction exists, the Court must consider whether Pelligrini's contacts with Illinois satisfy the Illinois long-arm statute as well as the Illinois and federal constitutions. *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Because the Illinois long-arm statute contains a "catch-all" provision allowing the Court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," 735 ILCS 5/2-209(c), courts typically look to federal constitutional limits on jurisdiction to measure the reach of Illinois due process.[1] *Spank! Music & Sound Design, Inc. v. Hanke*, No. 04 C 6760, 2005 WL 300930, at *2 (N.D. Ill. Feb. 7, 2005). Personal jurisdiction is thus established if TEKsystems demonstrates that Pelligrini "purposefully established minimum contacts" with Illinois and should "reasonably anticipate being haled into

---

[1]      To be clear, Pelligrini also transacted business in Illinois, 735 ILCS 5/2-209(a)(1), and his tortious acts occurred within in Illinois, 735 ILCS 5/2-209(a)(2). "As a practical matter, however, Subsection (c) subsumes the enumerated acts of subsection (a) . . . ." *Banwell v. Illinois Coll. of Optometry*, 981 F. Supp. 1137, 1139 (N.D. Ill. 1997).

court" here based on his conduct. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) and *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980)). When a defendant like Pelligrini "purposefully directed" his activities at Illinois and the claims arise from injuries caused by those activities, he is subject to the Court's jurisdiction. *Id.*

**I.     Because Pelligrini's Activities Were Purposefully Directed at Obtaining TEKsystems' Illinois Trade Secrets, This Court May Exercise Jurisdiction Over TEKsystems' Misappropriation of Trade Secrets Claim.**

Personal jurisdiction is proper over Pelligrini in this case under the "effects doctrine" because Pelligrini's conduct was purposefully and knowingly directed to TEKsystems' Illinois operations. Under the "effects doctrine," specific personal jurisdiction may be asserted against a defendant when his intentionally tortious conduct was aimed at Illinois and caused harm to a plaintiff here. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984). The Seventh Circuit interprets the doctrine broadly. In *Janmark*, the Seventh Circuit held that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor, even if all other pertinent conduct occurred outside of the forum state. *Janmark*, 132 F.3d at 1202. "This is because the location of the tortious injury is critical to understanding where the tort occurred." *Riddell*, 2003 WL 21799935, at *3 (citing *Janmark*). Examples of courts within this district following *Janmark* in trade secret misappropriation and other tort cases are legion. *See Spank! Music & Sound Design,* 2005 WL 300390, at *3 (trade secret misappropriation); *Experian Information Solutions, Inc. v. I-Centrix LLC*, No. 04 C 4437, 2004 WL 2643459, at *4 (N.D. Ill. Nov. 19, 2004) (same); *Clark Products*, 2002 WL 31572569, at *2 (misappropriation of business opportunity); *Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838110, at *4 (N.D. Ill. Aug. 12, 2002) (trade secret misappropriation).

Indeed, this Court in *Spank! Music & Sound Design* found the exercise of personal jurisdiction proper under similar facts. The defendants in that case, as Pelligrini does in this case, focused on their lack of physical connections to Illinois, arguing that they were California residents who had visited Illinois on only a handful of occasions. *Spank! Music & Sound Design*, 2005 WL 300930, at *1. The court rejected their arguments with reasoning that applies squarely to Pelligrini in this case:

> The court finds defendants have sufficient minimum contacts with Illinois to satisfy personal jurisdiction requirements. Spank alleges defendants misappropriated Spank's trade secrets and that the resulting injury is felt in Illinois. Indeed, defendants were aware

> Spank's principal place of business is in Illinois and the injury
> would be felt most severely in Illinois. *See Riddell*, 2003 WL
> 21799935 at *3. Under these circumstances, it was foreseeable
> that defendants would be required to answer for their actions in
> Illinois. . . . Nor is it unduly burdensome for defendants to litigate
> in Illinois. . . . [T]ravel to Illinois is not so oppressive as to offend
> traditional notions of justice.

*Id.* at *3.

In this case, TEKsystems alleges that Pelligrini solicited Defendant Lukas to breach his employment agreement and encouraged him to misappropriate TEKsystems' trade secrets. (Compl. ¶¶ 59-63, 88.) After Lukas was hired by Modis, Pelligrini coordinated Lukas' delivery of those trade secrets to Tim Cebula in Modis' Chicago office. (Compl. ¶¶ 67, 68.)[2] The resulting foreseeable injury was suffered by TEKsystems' Chicago and Downers Grove offices. (Compl. ¶¶ 134-35, 143.) Under the circumstances, it was entirely foreseeable and reasonable that Pelligrini would be required to answer for his actions before an Illinois court.

With his motion to dismiss, Pelligrini argues that "absent any allegation that [he] himself introduced any of TekSystems' [sic] trade secrets into the State of Illinois, personal jurisdiction … is entirely unwarranted." (Pelligrini Mem. at 8.) It is telling that Pelligrini does not cite any authority on this point. *Cf. FMC Corp. v. Varonos*, 892 F.2d 1308, 1311-1313 (7th Cir. 1990) (noting "large number of Illinois cases holding that mailings or telephone calls by a nonresident, when coupled with an intent to affect Illinois interests, are a sufficient basis for jurisdiction"). Pelligrini cannot escape liability or the Court's jurisdiction because he merely orchestrated the misappropriation of trade secrets and other confidential information. The legal test noted above is satisfied because Pelligrini deliberately acted to ensure that TEKsystems' Illinois trade secrets were misappropriated and delivered to Modis' Chicago office.

---

[2]    Pelligrini baldly denies this allegation in his affidavit, but recognizes, as he must, that "[a]ny conflicts in the affidavits or pleadings must be resolved in plaintiff's favor." (Pelligrini Mem. at 5.) Should the Court desire an evidentiary hearing on the conflict, TEKsystems would be prepared to present evidence establishing that Pelligrini's self-serving denial of this Complaint allegation is untrue.

II.   **Because Pelligrini Purposefully Solicited and Induced Lukas to Breach His TEKsystems' Employment Agreement and Policies, The Court May Exercise Jurisdiction over TEKsystems' Tortious Interference with Contract Claim.**

The same "effects doctrine" applies with equal force to TEKsystems' tortious interference with contract claim that is premised on Pelligrini's intentional interference with Lukas's employment agreement. Pelligrini does not dispute that he solicited Lukas to leave TEKsystems' Downers Grove, Illinois office, and that he also lobbied Modis management to find a place for Lukas at Modis. (Compl. ¶¶ 59-63.) As such, Pelligrini's efforts, whether conducted by phone, electronic mail, or in person, were intended to affect Illinois interests, namely TEKsystems' employment relationship and contract with Lukas in TEKsystems' Downers Grove, Illinois office. *See Information Techs., Int'l, Inc. v. ITI of N. Fla., Inc.*, No. 01 C 4668, 2001 WL 1516750, at *7-*8 (N.D. Ill. Nov. 28, 2001) (finding personal jurisdiction over defendants who "reached across state boundaries and into Illinois by hacking into ITI's computer system" from their computers in Florida).

*Grand Vehicle Works Holdings, Corp. v. Frey*, No. 03 C 7948, 2004 WL 742085, at *4 (N.D. Ill. April 6, 2004), a case cited by Pelligrini, illustrates the application of these principles under similar facts. In that case, plaintiff Grand Vehicle alleged that defendants Fish and Frey "tortiously interfered with Grand Vehicle's contractual relations with Tony Monda by improperly influencing him to terminate his employment agreement." *Id.* Defendants' non-compete agreements with Grand Vehicle prohibited them from directly or indirectly soliciting or inducing any employee of the company to terminate or otherwise enter any arrangement to compete with the company. *Id.* The court found the exercise of personal jurisdiction on Grand Vehicle's tortious interference claim proper because the injury was felt in both Indiana and Illinois. *Id.*

Pelligrini misses the legal and factual focus of a personal jurisdiction inquiry. He first contends that he "had no intent to affect any Illinois interest" because "there is no allegation that [his] few telephone calls to Illinois involved any misrepresentations." (Pelligrini Mem. at 9.) While this might be true in fraud cases such as those cited by Pelligrini, TEKsystems alleges that Pelligrini tortiously interfered with Lukas' employment relationship and agreement with TEKsystems. "What [Pelligrini] fails to recognize . . . is that 'the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for [his] deed even if events were put in train outside its borders.'" *Clearclad Coatings, Inc. v. Xontal Ltd.*, No. 98 C 7199, 1999

WL 652030, at *17 (N.D. Ill. Aug. 20, 1999) (quoting *Janmark*, 143 F.3d at 1202). Indeed, in *Grand Vehicle*, the court found personal jurisdiction over the defendants who had called Monda from out-of-state, notwithstanding a factual dispute as to whether Monda was at home in Indiana or at the office in Illinois when he took the call. *Grand Vehicle*, 2004 WL 742085, at *4; *see also Information Techs., Int'l*, 2001 WL 1516750, at *6 (finding jurisdiction over defendants who argued that "the alleged acts . . . occurred entirely in the State of Florida"); *Int'l Business Machines Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.*, 666 N.E.2d 866, 869, 281 Ill. App. 3d 854, 859 (Ill. App. Ct. 1996), *superceded by statute on other grounds as stated in Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 827 N.E.2d 1031, 1036, 357 Ill. App. 3d 381, 386 (Ill. App. Ct. 2005) ("The question presented under this section is, therefore, whether the plaintiffs have alleged that Skoller committed some act or omission causing injury in Illinois.").

Straying farther afield from any personal jurisdiction analysis, Pelligrini next attacks the TEKsystems' allegations that were made "on information and belief" stating that Lukas signed an employment agreement and that Pelligrini solicited Lukas to leave TEKsystems. (Pelligrini Mem. at 10.) Although Pelligrini cites no authority explaining how pleadings on information and belief impact the jurisdictional inquiry, Pelligrini's concerns are of no moment—TEKsystems has specified the basis for its information and belief that Lukas signed an employment agreement. (*See* Compl. ¶ 140; Ex. 1, Overly Aff. ¶¶ 10-11 (noting TEKsystems' strict policy requiring signed employment agreements from all Account Managers).) Moreover, Pelligrini does not even dispute that he solicited Lukas to leave TEKsystems and join Modis. (Compl. ¶¶ 59-63.) Pelligrini's argument is a red herring; TEKsystems has alleged and demonstrated that jurisdiction is proper under the effects doctrine.

In his last-ditch argument, Pelligrini contends that TEKsystems' tortious interference with contract claims are preempted by the Illinois Trade Secrets Act. (Pelligrini Mem. at 11.) Pelligrini, however, has not moved to dismiss the claim on this basis; his motion is directed solely at personal jurisdiction. More importantly, his contention lacks merit because TEKsystems' tortious interference with contract claim does not exclusively involve the misappropriation of trade secrets. *Sistema* squarely addressed a motion to dismiss on preemption grounds where fact discovery was still open, finding that the court must only consider whether plaintiff alleges that each count is "based solely upon the misappropriation of trade secrets, or upon wrongdoing of a different sort." *Sistema*, 2005 WL 3436398, at *6. The plaintiff in

*Sistema* alleged that the defendants had enticed another to break his contract with plaintiff and to solicit suppliers, customers, employees, and/or consultants. *Id.* Emphasizing that "confidential information encompasses a broader amount of information than merely trade secrets," the court declined to dismiss plaintiff's tortious interference with contract and other claims on preemption grounds. *Id.* This case is similarly postured: discovery has just commenced, and TEKsystems' claim is premised not only on the misappropriation of trade secrets and other confidential information, but also on Pelligrini's breach of the non-solicitation provisions of his own contract with TEKsystems as well as his inducement of Lukas to breach his employment agreement and obligations to TEKsystems. Pelligrini's preemption argument is a red herring on the personal jurisdiction issue, premature before discovery has closed, and erroneous in any event.

III.  **Because Pelligrini Breached his Employment Agreement by Soliciting Lukas to Leave TEKsystems, and by Orchestrating the Transfer of Confidential and Trade Secret Information to Modis, Personal Jurisdiction is Established Over TEKsystems' Breach of Contract Claim.**

In a familiar yet tired refrain, Pelligrini argues that the Court cannot exercise jurisdiction over TEKsystems' breach of contract claim against him because he has only had "limited telephone communications" with Illinois that do not satisfy due process. (Pelligrini Mem. at 8.) The primary case cited by Pelligrini recognizes that the court should look only to the dealings between the parties in regard to the disputed contract. *See Stericycle v. Sanford*, No. 02 C 5200, 2002 WL 31856720, at *5 (N.D. Ill. Dec. 20, 2002). But the decision also states that "[t]he dealings between the parties in regard to the disputed contract do not vanish after the contract is formed." *Id.* at *6. Indeed, in this case, it is precisely Pelligrini's contacts with Lukas in Illinois that give rise to TEKsystems' breach of contract claim.

It is simply not the case that TEKsystems seeks to establish jurisdiction through a "loose causal connection" between the breach of contract and Pelligrini's contacts with Illinois. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997). Pelligrini breached his employment agreement in soliciting Lukas to leave TEKsystems. (*See* Compl. ¶ 28 & Ex. A ¶ 4; Pelligrini Mem. at 3.) Pelligrini was aware of the terms of his employment agreement, and chose nevertheless to solicit Lukas to join Modis from TEKsystems' Downers Grove, Illinois office.

(*See* Compl. ¶ 57 & Ex. D.)[3] His efforts succeeded, and resulted in an employment agreement. *See Arnold v. Goldstar Fin. Sys., Inc.*, No. 01 C 7694, 2002 WL 1941546, at *5 (N.D. Ill. Aug. 22, 2002) ("Active solicitation of a forum resident is sufficient to support personal jurisdiction"). The Court's jurisdiction results from Pelligrini's own conduct directed toward persons in Illinois.

Even if the Court were to find that the totality of the contracting circumstances does not warrant the exercise of personal jurisdiction over TEKsystems' breach of contract claim standing alone, the exercise of pendent personal jurisdiction would be proper. "Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." *Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991). After all, once Pelligrini is before the Court, "it matters little, from the point of view of procedural due process, that he has become subject to the court's ultimate judgment as a result of territorial or extra-territorial process." *Id.* TEKsystems' breach of contract claim unquestionably arises out of the same nucleus of facts as its tort claims. From the standpoint of fundamental fairness as to contacts with and convenience of the forum, Pelligrini, as in *Rice*, loses nothing by being subject to this Court's judgment on the contract claim. *See id.*

**IV.    The Equitable and Discretionary Fiduciary Shield Doctrine Does Not Excuse a Wrongdoer Like Pelligrini Who Had Personal Interests in Hiring His Friend Lukas and Who Acted Without Compulsion from Modis.**

Seeking to invoke an escape hatch, Pelligrini argues that the fiduciary shield doctrine precludes the exercise of jurisdiction over him because his alleged contacts with Illinois "were by virtue of his acts as a fiduciary of Modis." (Pelligrini Mem. at 14.) The doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which suit is brought were solely on behalf of his employer or other principal." *Clark Products*, 2002 WL 31572569, at *3 (emphasis added). The shield, however, is not an absolute entitlement; rather, its application is discretionary and equitable in nature. *Frey*, 2004 WL 742085, at *6.

---

[3]    Pelligrini also breached his employment agreement by accepting employment and competing with TEKsystems from Modis' Detroit office within 50 miles of his former TEKsystems' office in the Detroit suburb of Southfield. (Compl. ¶ 27 & Ex. A ¶ 3; Pelligrini Mem. at 3.) Pendent personal jurisdiction and judicial economy warrant consideration of this breach as part of the common nucleus of facts that give rise to TEKsystems' contract and tort claims.

Even under the "fiduciary shield" doctrine, there are two exceptions that prevent its application to Pelligrini in this case. First, the shield is withdrawn if Pelligrini "was acting also (or instead) on his own behalf to serve his personal interests." *Id.* (citation omitted); *McMurray v. ImproveNet, Inc.*, No. 00 C 7137, 2001 WL 561376, at *3 (N.D. Ill. May 22, 2001). As noted by the court in *McMurray*, a case cited by Pelligrini, the personal interests need not be pecuniary. *McMurray*, 2001 WL 561376, at *3.

In this case, Pelligrini purportedly received no pecuniary benefit or other remuneration from Modis as a result of his successful efforts to solicit Lukas to leave TEKsystems to work for Modis after pilfering TEKsystems' trade secret and other confidential information. (Pelligrini Mem. at 5 & Ex. 1 ¶¶ 7, 9.) Pelligrini also points out that he "would receive no personal benefit from doing so either since [he] did not work in the Chicago office and TEKsystems' information regarding the Chicago market would not assist [him] in . . . Minneapolis, Minnesota." (Pelligrini Mem. Ex. 1, ¶ 7.) What then might have motivated him if his efforts would not translate into a monetary or occupational benefit? Pelligrini and Lukas were personal friends. (Ex. 1, Overly Aff. ¶ 6.) It is thus reasonable to infer, as the Court must on a motion to dismiss, that Pelligrini "was acting also . . . on his own behalf to serve his personal" friendship with Lukas when he solicited him for a job with Modis and encouraged him to bring TEKsystems' confidential information with him to the new job. *Frey*, 2004 WL 742085, at *6.

The second exception to the fiduciary shield doctrine also squarely applies to the facts presented. As noted in *Clark Products*, "the shield generally does not apply when the individual's actions are discretionary." *Clark Products*, 2002 WL 31572569, at *3. More specifically, "the shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." *Brujis v. Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995) (collecting and analyzing cases decided after *Rollins v. Ellwood*, 565 N.E.2d 1302, 141 Ill.2d 244 (1990) and concluding discretion is an important though not determinative factor in analysis where "fairness is the key"). As in *Clark Products*, Pelligrini has not demonstrated that his actions were anything but voluntary. *Id.* (citing *Brujis*, 876 F. Supp. at 980). Tellingly, Pelligrini does not contend that Modis directed him to solicit Lukas and to encourage Lukas to bring misappropriated trade secrets and other confidential information to Modis. And Modis denies that its management so instructed Pelligrini. (Modis Answer ¶¶ 87-88 (Docket # 51).) The only reasonable inference remaining is

that Pelligrini voluntarily chose to solicit Lukas for a job at Modis in the exercise of his discretion as a Managing Director for Modis. *See Consumer Benefit Servs., Inc. v. Encore Marketing Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *4 (N.D. Ill. Oct. 30, 2002) ("[B]ecause of their senior positions with Encore, it is difficult to imagine them exercising more discretion. (internal quotation and citation omitted)). Simply stated, "equity does not compel the application of the fiduciary shield doctrine to protect [Pelligrini] from the Court's exercise of personal jurisdiction over [him] under Illinois law." *Id.* To the contrary, "equity demands" a finding of jurisdiction. *Brujis*, 876 F. Supp. at 980.

Pelligrini's heavy reliance on *Lakeview Technology, Inc. v. Vision Solutions, Inc.*, No. 05 C 7209, 2007 WL 79246 (N.D. Ill. Jan. 9, 2007), is misplaced under the facts presented in this case. Although it is true that the facts and claims in *Lakeview Technology* are similar to those presented in this case (as are those in *Clark Products*), the fiduciary shield facts and analysis depart substantially. For example, the court in *Lakeview Technology* considered as the "determinative factor" whether the individual was a shareholder. *Lakeview Tech.*, 2007 WL 79246, at *5. The court had no occasion to consider whether other personal interests, such as Pelligrini's friendship with Lukas, would remove the shield's protection. *Cf. McMurray*, 2001 WL 561376, at *3 (personal interests need not be pecuniary). And the court in *Lakeview Technology* did not even consider whether the defendant's discretionary conduct precluded application of the shield. *Consumer Benefit Servs.*, 2002 WL 31427021, at *4; *Clark Products*, 2002 WL 31572569, at *3. Given its limited analysis, *Lakeview Technology* does not alone warrant application of the doctrine to shield Pelligrini from this Court's scrutiny of his conduct. Equity compels just the opposite.

<u>CONCLUSION</u>

For the foregoing reasons, TEKsystems respectfully submits that Pelligrini's motion to dismiss for lack of personal jurisdiction should be denied. While unwarranted, should the Court feel that the facts presented by TEKsystems do not adequately establish the Court's personal jurisdiction over Pelligrini, TEKsystems submits that an evidentiary hearing following an opportunity to conduct discovery would be the appropriate next step. In the extreme case that the Court believes Pelligrini's motion should be granted, the Court should transfer the action as against Pelligrini to the Eastern District of Michigan where jurisdiction clearly lies, or dismiss Pelligrini without prejudice.

Dated: November 20, 2008       **TEKSYSTEMS, INC.**

By:    <u>/s/ Tomas M. Thompson</u>
          One of Its Attorneys

     Monica L. Thompson
     Raj. N. Shah
     Tomas M. Thompson
     Elizabeth H. Bartels
     DLA Piper LLP (US)
     203 North LaSalle, Suite 1900
     Chicago, IL 60601
     (312)368-4000

## CERTIFICATE OF SERVICE

I, Tomas M. Thompson, an attorney, certify that on November 20, 2008, I caused a true and correct copy of TEKSYSTEMS' RESPONSE IN OPPOSITION TO DEFENDANT BRIAN PELLIGRINI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to:

Michael J. Gray
Mark W. DeMonte
Sara Paul Leitenberger
**JONES DAY**
77 West Wacker
Chicago, IL 60601-1692
mjgray@jonesday.com
mdemonte@jonesday.com
sleitenberger@jonesday.com

Jeffrey L. Widman
Rebecca J. Hanson
S. Jarret Raab
**SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN LLC**
321 N. Clark Street, Suite 800
Chicago, IL 60654
jlwidman@shawgussis.com
rjhanson@shawgussis.com
jraab@shawgussis.com

Jeffrey P. Watson
Robert G. Riegel, Jr.
**FOWLER WHITE BOGGS BANKER P.A.**
50 N. Laura Street, Suite 2200
Jacksonville, FL 32202
Jeff.watson@fowlerwhite.com
Robert.riegel@fowlerwhite.com

/s/ Tomas M. Thompson
Tomas M. Thompson

CENTRAL\31087153.2

14